**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BONNIE J. STRONG, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00367 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I.     Introduction

Plaintiff Bonnie J. Strong brings this case challenging the Social Security Administration's denial of her applications for Supplemental Security Income and Disability Insurance Benefits.  She asserted through her applications that she was eligible for benefits because she was under disability starting on January 11, 2005.  Her disabilities, she maintained, involved significant back and hand pain.  The Social Security Administration denied her applications through the written non-disability decision by Administrative Law Judge (ALJ) Amelia G. Lombardo.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order remanding the matter to the Social Security Administration either for payment of benefits or for further proceedings.  The Commissioner seeks an affirmance of the ALJ's non-disability decision.

**II.    Background**

      **A.    Plaintiff's Vocational Profile and Testimony**

Plaintiff was 49 years old on the date she allegedly became disabled.  This placed her in the category of a younger person for the purpose of determining whether she was eligible for benefits.  She has a limited education.  Her employment history reveals that she has held jobs for short periods of time with minimal earnings.  She therefore lacks past work experience that is relevant to her applications for benefits.

During the administrative hearing by ALJ Lombardo, Plaintiff testified that she has problems dealing with people.  She has anxiety attacks that cause her to "freak out at times." (Doc. #6, *PageID* #91).  This occurs once a day.  She has "problems going out in public and dealing with people." *Id*. at 93.  Her family physician, Dr. Erdy, prescribes medication for her anxiety attacks.  She has crying spells daily and nightmares due to domestic violence she has suffered.  She has memory problems like not recalling whether she has taken her medications.  Her mind will also go blank during conversations with her ex-husband and she can't remember what they were talking about.

2

Plaintiff explained that she has herniated disks in her back and a ruptured sciatic nerve. She has been prescribed pain medications, including Vicodin. She does not like taking Vicodin due to her past drug addiction. She stopped using drugs in about 2005.

Plaintiff estimated that on a typical day, her pain level is at 4 or 5 on a 0-to-10 scale (0 equaling no pain; 10 equaling the worst pain she could imagine). She has level-5 pain in her leg all the time. She can walk about 2 blocks but will be hurting as a result. When she sits, she needs to keep adjusting her position. The doctor told her not to lift anything over 5 pounds, and she thinks this is about the most she can lift.

As to her daily activities, she does the dishes but must sit after 10 to 15 minutes. She does her own laundry and will make a sandwich for herself when hungry. Her ex-husband, with whom she lives, takes care of the remaining housework. She goes shopping with her ex-husband on a good day, once or twice a month. They try to go when it is not crowded. She does not have any hobbies. During a typical day, she plays games on her cellphone, watches TV, and takes naps.

Plaintiff further testified that she has a hearing problem. At times during her testimony, she had difficulty hearing the questions she was asked. *E.g.*, Doc. #6, *PageID*#s 85-87. She worked in the past at a Frisch's restaurant but her hearing problem limited her to salad-bar duties, like cleaning and keeping the salad bar stocked. Before this, she worked at times as a bartender and a waitress, interacting with people quite a bit. Her ability to interact like this changed after she experienced domestic violence in 2011. In one incident, she was

pushed down a flight of stairs.  Before this happened, she did not have issues with her back and leg.  During her nightmares, she re-experiences this event.

> B. **Medical Evidence**

Plaintiff's family physician Dr. Erdy began treating her in February 2013.  She originally presented with "depression, polyneurothy, bipolar disorder, back pain from trauma relating to injuries sustained during an abusive encounter in 2005 or thereabouts.¨ (Doc. #6, *PageID* #703).  In May 2013, Dr. Erdy wrote a narrative report and completed a physical capacity evaluation.  *Id*. at 703-08.  Dr. Erdy observed the following about Plaintiff's mental impairments:

> She generally presents to the office in a quiet, subdued, almost fearful manner and remains quiet and passive throughout her visits each time.  She is well dressed, exhibits good hygiene and seems pleasant though quiet and reserved.  She describes a harrowing time with her prior partner until he threw her down the stairs causing significant injury.  He was imprisoned, I am told, but is out and she feels he may be stalking her.  She lives in fear and her demeanor bears this out.  She is currently involved with another man and that relationship is rocky at best from what she tells me.  This is largely because of her and her troubles.

*Id*. at 703.  Dr. Erdy identified either marked or extreme limitations in various categories of social interaction, *id*. at 706; marked limitation in various areas under the heading "sustained concentration and persistence," *id*. at 707; and either marked or extreme limitations in adaptation, *id*. at 707-08.

A physical-capacity form asked Dr. Erdy to provide for additional remarks including any additional work-related limitations not yet addressed on the form.  Dr. Erdy responded

4

> Cannot separate her body from her mind. Due to her mental condition, a result of abuse, physical altercations, and years of no support, she would have a very difficult time engaging in meaningful, sustainable, collegial relationships and be more fearful, paranoid, vulnerable due to her experiences to date.

*Id*. at 705. In a psychological-assessment form, Dr. Erdy noted:

> [Patient] is a victim of spousal abuse, PTSD, severe depression. I doubt that she could engage in any reasonable manner. She deteriorates in a one on one relationship with a friend who gave her free reign.

*Id*. at 708. Dr. Erdy prescribed several medications to treat Plaintiff's mental-health problems – namely, Effexor, Tegretol, and Seroquel.[2] *Id*. at 709.

As to Plaintiff's physical limitations, Dr. Erdy opined that she could sit, stand, and walk 4 hours each in a work day and work situation; she could lift 11 to 20 pounds on an occasional basis; and she could use her hands for repetitive grasping, pushing, pulling, and fine manipulation. *Id*. at 704. Dr. Erdy believed that Plaintiff would likely have partial or full-day unscheduled absences from work, occurring 5 or more days per month due to her diagnosed conditions, pain and/or side effects of medication. *Id*. at 705.

On April 11, 2013, psychologist Dr. Firmin conducted a consultative-psychological examination of Plaintiff. The results appear in Dr. Firmin's narrative report and in a form he completed titled "Mental Functional Capacity Assessment." *Id*. at 712-20. In the latter form, Dr. Firmin indicated his opinion that Plaintiff had marked limitations – the highest degree of limitation on the scale used by the form – in her ability (1) to complete a normal

---

[2] Effexor treats depression and various anxiety disorders. Tegretol and Seroquel treat episodes of mania or depression in bipolar disorder, among other problems. Https://www.nlm.nih.gov (search: MedllinePlus – Drugs & Supplements database).

5

workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) to interact appropriately with the general public; (3) to accept instructions and respond appropriately to criticism from supervisors; (4) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (5) to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (6) to respond appropriately to changes in the work setting.  *Id*. at 712.  Dr. Firmin concluded that Plaintiff was employable and would remain so for 12 months or more.

> In his narrative report, Dr. Firmin explained:
>
> Overall, the applicant's description of mental health complaints was consistently described and was congruent with the applicant's presenting issue indicated in the present report.  Naturally, she was not expected to show the plenary symptoms of mental health issues, particularly when many individuals attempt to be polite and display good character when participating in a professional interview.  Notwithstanding, the applicant showed sufficient clinical indicators to suggest reasonable reliability of the self-report data.

*Id*. at 713.  Dr. Firmin described Plaintiff's mood as "nervous and pessimistic," and "her affect and emotional responsiveness was judged to be melancholic and worried."  *Id*. at 716.  She described previous episodes of manic moods followed by depressive moods.  Regarding anxiety, she "showed outward manifestations of crying and leg shaking and she reported some symptoms of anxiety in the last 6 months, including restlessness or feeling keyed up or on edge, difficulty concentrating, irritability, and sleep disturbances." *Id*.

In a clinical note, Dr. Firmin related that Plaintiff's symptoms "have included

6

undergoing events that involved the potential for serious injury, generated intense fear, and resulted in recurrent and intrusive recollections of the event.  The indicated trauma resulted in efforts to avoid conversations and activities associated with the event, markedly diminished involvement in significant activities, becoming irritable, and having difficulty in concentration." *Id*. at 717.

When ALJ Lombardo issued her decision, Dr. Firmin's report was not in the record.  Plaintiff's counsel did not receive the report until 1 month after the ALJ's issued her decision.  The Appeals Council added Dr. Firmin's report to the administrative record.

A detailed description of the remaining evidence is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have discussed the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner adopts and incorporates the ALJ's factual discussion of the relevant medical evidence.

### III. "Disability" Defined and ALJ Lombardo's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both benefit programs.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the

applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

ALJs apply an algorithm in 5 sequential steps to determine whether or not an applicant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see*.[3] ALJ Lombardo's pertinent findings occurred at steps 2, 3, and 4 of the applicable algorithm.

At step 2, ALJ Lombardo found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine; hearing problems of unknown etiology, and bipolar disorder. (Doc. #6, *PageID* #66). At step 3, the ALJ concluded that Plaintiff does not have an impairment, or combination of impairments, that meets or equals the severity of one in the Commissioner's Listing of Impairments.[4]

At step 4, ALJ Lombardo assessed Plaintiff's residual functional capacity or the most she could do in a work setting despite her impairments. *See* 20 C.F.R. §404.1545(a); *see also Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). She concluded that Plaintiff could perform light work[5] "subject to the following limitations: unskilled work that is low stress with no assembly line production quotas and not fast paced;

---

[3] The remaining citations to the regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulation.

[4] The Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

occasional contact with the general public, co-workers, and supervisors; and noise level of 3 per DOT [Dictionary of Occupational Titles]."  (Doc. #6, *PageID* #69).

The ALJ found at step 5 that Plaintiff could perform a significant number of jobs that exist in the national economy.

The sum and substance of the ALJ's sequential evaluation led her to ultimately conclude, as noted previously, that Plaintiff was not under a benefits-qualifying disability.

### IV.     <u>Judicial Review</u>

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Poulose's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, substantial evidence supports the ALJ's factual findings when "a

'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

V.    **Remand: 42 U.S.C. §405(g), Sentence 6**

Plaintiff contends that a remand to the Social Security Administration is warranted under sentence 6 of 42 U.S.C. §405(g) for consideration of consulting psychologist Dr. Firmin's opinions, which did not come to light until a month after the ALJ's decision even though it pre-dates the ALJ's decision.  Once Plaintiff's counsel received Dr. Firmin's report, he submitted it to the Appeals Council.

The Commissioner counters that a sentence 6 remand is unwarranted because Dr. Firmin's report is not new evidence – it is dated 3 months before the ALJ's decision; it is duplicative and does not constitute material evidence; and there is no good cause to justify Plaintiff's failure to present it to the ALJ.

Evidence submitted in the first instance to the Appeals Council may only be considered by this Court to determine if a remand is appropriate pursuant to sentence 6 of § 405(g).  *Casey v. Secretary of HHS,* 987 F.2d 1230, 1233 (6th Cir. 1993); *see Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1992); *see also Wyatt v. Secretary of HHS*, 974 F.2d 680, 685 (6th Cir. 1992).  A sentence 6 remand is warranted only upon a showing that the evidence is new and material, and that there is good cause, meaning "a reasonable justification for

failing to present the evidence to the ALJ." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 422 (6th Cir. 2014) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see* 42 U.S.C. §405(g).  "The proponent of the new evidence bears the burden of proof that the evidence is both new and material." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (citation omitted).

  The Commissioner is correct to point out that Dr. Firmin's report was not new because it was dated April 11, 2013, 3 months before the ALJ's decision on July 11, 2013. Yet, the Commissioner incorrectly views the evidence solely with existential glasses.  Surely the report was not new in the sense that it existed – *i.e.*, it had corporeal form – before the ALJ issued her decision.  But the applicable term "new" is not limited to mere existence: "For the purposes of a 42 U.S.C. §405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting, in part, *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  The record in the present case reveals that although Dr. Firmin's report existed, it was not available to Plaintiff's counsel before the ALJ's decision. Plaintiff's counsel explained during the administrative hearing that the Ohio Department of Job and Family Services [Ohio DJFS] had "recently outsourced all of their records to a firm in Massachusetts."  (Doc. #6, *PageID* #85).  He further explained that he was attempting to "run down" the results of consultative exams, but it had "been a very interesting couple of months trying to get anything from them [Ohio DJFS].  They don't seem to know where the

records are lately." *Id*. The administrative record does not contain any contrary information and there is no real dispute that Dr. Firmin's report was unavailable to Plaintiff's counsel – through no fault of his own – before the ALJ issued her decision. This satisfies the disjunctive "new or not available" element needed to support a sentence-6 remand. *See Foster*, 279 F.3d at 357.

The Commissioner also contends that Plaintiff cannot show good cause for failing to present Dr. Firman's report to the ALJ. The Commissioner points out that when the ALJ asked if counsel wanted to keep the record open for a week or so to get consultative exam reports, Plaintiff's counsel said, "I wouldn't necessarily keep the record open for that ...." (Doc. #6, *PageID* #85). Counsel's statement must be viewed together with his explanation about the difficulty, indeed the barrier, he had encountered when trying to get records from the Ohio DJFS. Plaintiff's counsel informed the ALJ about the particular reason for the problem caused by the Ohio DJFS's recent outsourcing of record-keeping. Facing this barrier to producing the record – which was wholly beyond counsel's control – he had a reasonable justification, *i.e.*, good cause, for not submitting Dr. Firmin's report to the ALJ before she issued her decision.[6]

The Commissioner next contends that Dr. Firmin's report was not material to the ALJ's disability determination because Dr. Firmin's assessment was similar to Dr. Erdy's

---

[6] Additionally, given that Plaintiff's counsel did not receive the record until about 1 month after the ALJ's decision, Plaintiff would not have been able to submit the record in a timely manner even if he had asked the ALJ keep the record open for a week or so after the hearing. Consequently, counsel's statement about not necessarily keeping the record open was inconsequential.

assessment, which the ALJ properly rejected.

Evidence is "'material' if there is a reasonable probability that the ALJ would have reached a different decision had the additional evidence been presented." *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 463 (6th Cir. 2007) (citing *Foster*, 279 F.3d at 357). The Commissioner's contention lacks merit because the ALJ discounted Dr. Erdy's opinion based in part on his lack of specialization. Given this, the addition of Dr. Firmin's report to the record would have 2 significant consequences. First, it follows logically from the ALJ's reasoning that if Dr. Erdy's non-specialist opinions were due less weight, Dr. Firmin's opinions in his area of expertise would deserve more weight. Second, Dr. Firmin's opinions confirm the validity of Dr. Erdy's opinions to the extent their opinions were similar. Similarities between their opinions would then justify placing more weight on Dr. Erdy's opinions under the consistency factor. *See* 20 C.F.R. §404.1527(c)(4). Given this, there was a "reasonable probability" that the ALJ would have reached a different decision if Dr. Firmin's report had been presented to her. And, therefore, Dr. Firmin's report was material to the ALJ's weighing of Dr. Erdy's opinion and to the ALJ's disability determination.

The Commissioner points out that the Appeals Council considered whether the additional evidence provided a basis for reversing the ALJ's decision, and it "was not required to do more." (Doc. #11, *PageID* #765). In support, the Commissioner relies on several cases from outside the Sixth Circuit. Each case the Commissioner relies on is addressed whether the Appeals Council must provide an explanation or specific findings of

13

fact concerning evidence that was added to the administrative record after the ALJ's decision.[7]  Plaintiff does not contend that the Appeals Council had a duty to articulate its reasoning or findings beyond the information it provided.  In the present case, moreover, Plaintiff has met her burden of establishing the elements needed to support a sentence 6.  Because of this, the Court is not bound by the Appeals Council's decision to deny review but instead has the statutory authority to remand the matter for further proceedings in light of the new and material evidence.  *See* 42 U.S.C. §405(g).

Accordingly, a remand of this matter under sentence 6 of 42 U.S.C. §405(g) is warranted.[8]

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under sentence 6 of 42 U.S.C. §405(g) for further consideration consistent with this Report and a Decision and Entry adopting this Report; and

---

[7] The Commissioner cites *Parks ex rep D. P. V. Comm'r Soc. Sec. Admin.*, 783 F.3d 847, 852-52 (11th Cir. 2015); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782-83 (11th Cir. 2014); *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011); *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006).

[8] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of the parties' remaining contentions is unwarranted.

4. The case be administratively closed but not terminated on the docket of this Court.

December 30, 2015

                s/Sharon L. Ovington
                Sharon L. Ovington
           Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).